UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/3/2022

UNITED STATES OF AMERICA,

     -against-

MYRON WAGNER,

               Defendant.

No. 20-CR-410 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Defendant Myron Wagner ("Defendant"), also known as "My Dogg," is charged by indictment on August 17, 2020, with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and (2). (ECF No. 9.) A trial is scheduled for January 12, 2022. (ECF No. 51.) Before the Court are the Government's motion *in limine* (ECF No. 39) and Defendant's cross-motion *in limine* (ECF No. 41).

The Government moved *in limine* to: (1) admit evidence of Defendant threatening to shoot his ex-girlfriend; (2) limit the scope of cross-examination of law enforcement witnesses to the scope of their direct testimonies; (3) preclude cross-examination of any eyewitness regarding any drug or alcohol use other than during the time of the observed events; (4) preclude cross-examination of Defendant's ex-girlfriend regarding her prior misdemeanor assault conviction; and (5) preclude Defendant from challenging the legality of his arrest and subsequent search of his cellphone at trial. (ECF No. 39.)

Defendant moved *in limine* to: (1) preclude the Government from referring to Defendant's ex-girlfriend as a "victim"; (2) exclude a portion of the 911 call that refers to Defendant as the individual who committed the alleged crime; (3) exclude certain audio or video recordings of Defendant at the Peekskill Police Department; (4) exclude Defendant's prior criminal history and

the specific facts of any prior offense except where necessary and limited for the purpose of proving the prior felony element of § 922(g); (5) preclude the Government from referring to Defendant as a "convicted felon"; and (6) preclude the Government from referring to the shooting. (ECF No. 41.)

For the following reasons, the motions are granted in part and denied in part.

## BACKGROUND

The Government alleges the facts in the following three paragraphs.

On or about August 3, 2020, Defendant entered the Peekskill Police Department ("PPD") headquarters in Peekskill, New York to file a complaint against his then-girlfriend. (ECF No. 1 at 2; ECF No. 39 at 2.) Defendant was captured on surveillance footage to have entered the PPD headquarters at approximately 2:40 P.M. and left at approximately 2:42 P.M. (*Id.*) At approximately 2:47 P.M.[1], a 911 call was made during which the caller reported that his wife had just witnessed a black male with black shorts and a red hat pull out a silver gun and shoot at a vehicle at the intersection of Nelson Avenue and Pauling Street in Peekskill, New York. (ECF No. 1 at 2–3.; ECF No. 39 at 2.)

PPD officers responding to the 911 call saw an individual, later identified as Defendant, wearing the same clothing described by the 911 caller approximately two minutes later in the vicinity of Highland Avenue and Orchard Street, approximately two blocks away from the reported shooting. (ECF No. 39 at 2.) The individual ran into a barbershop and emerged approximately thirty seconds later, at which point PPD officers detained the individual and identified him as Defendant. (*Id.*) Officers interviewed the staff inside the barbershop and learned that Defendant

---

[1] The Complaint and the Government's Motion *In Limine* initially stated the 911 call was made at approximately 2:55 P.M. (ECF No. 1 at 2; ECF No. 39 at 2.) The Government later corrected the time to approximately 2:47 P.M. (ECF No. 50 at 9, n.4.)

ran into the shop, threw a firearm onto one of the barber's laps, and attempted to flee before he was detained by officers. (*Id.* at 3.) Officers removed the firearm from inside one of the barber's workstations. (*Id.*)

Surveillance cameras captured Defendant's then-girlfriend immediately reporting the shooting to officers at the PPD headquarters. (*Id.*) Defendant's then-girlfriend was already driving to the PPD headquarters on the afternoon of August 3, 2020, after Defendant had threatened to shoot her. (*Id.*) Defendant's then-girlfriend saw Defendant as she approached the intersection of Nelson Avenue and Pauling Street in her car. (ECF No. 1 at 4; ECF No. 9 at 3.) Defendant pulled out a silver revolver style pistol and fired a shot at her windshield. (ECF No. 1 at 4; ECF No. 9 at 3.)

On August 17, 2020, a grand jury returned a one-count indictment, which charges Defendant with, knowing that he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly possessing a firearm, to wit, a loaded Rohm RG-10, .22 caliber pistol, and the firearm was in and affecting commerce on or about August 3, 2020. (ECF No. 9.) On August 31, 2020, Defendant was arraigned before the Honorable Paul E. Davison during which Defendant entered a plea of Not Guilty.

On October 22, 2021, the Government filed a motion *in limine*. (ECF No. 39.) On November 4, 2021, Defendant filed a cross-motion *in limine* (ECF No. 41) and his opposition to the Government's motion (ECF No. 42.) On November 18, 2021, the Government filed a response in support of its motion (ECF No. 49) and an opposition to Defendant's motion. (ECF No. 50.)

## LEGAL STANDARDS

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d

173, 176–77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)).  An *in limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."  *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal citation omitted).  "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, No. 09 CR 1153 MEA, 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139).

With certain exceptions, all relevant evidence is admissible, and evidence which is not relevant is not admissible.  Fed. R. Evid. 402.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Relevant evidence may still be excluded by the Court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Though the "standard of relevance established by the Federal Rules of Evidence is not high," *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985), the Court has "broad discretion to balance probative value against possible prejudice" under Rule 403, *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008).

## DISCUSSION

### I.     Evidence Of Defendant's Threats To Shoot His Ex-Girlfriend

The Government seeks to introduce evidence that Defendant threatened to shoot his ex-girlfriend on August 3, 2020.  (The Government's Motions *In Limine* ("Gov.'s Mot."), ECF No.

39 at 4–11.)  The Government intends to offer testimony from Defendant's ex-girlfriend that she

was driving to the PPD headquarters on August 3, 2020 because Defendant had threatened to shoot

her.  (*Id.* at 4.)  The Government asserts that such evidence is admissible as direct evidence, or

alternatively as other evidence relevant to Defendant's motive and corroborative of Defendant's

knowledge and intent of the charged crime authorized by Federal Rule of Evidence 404(b).  (*Id.* at

9–10.)  The Government also argues that the significant probative value of the evidence outweighs

any unfair prejudice and that any prejudicial effect can be minimized with a limiting instruction.

(*Id.* at 10–11.)  Defendant objects and argues that the Government is seeking to admit prior acts of

an uncharged conduct that is inadmissible for the purposes delineated in Rule 404(b).  (Defendant's

Response to Government's Motion *In Limine* ("Def's Opp."), ECF No. 42 at 4–7.)  Furthermore,

Defendant argues that the evidence creates a high probability that the jury would be induced to

convict him based on prior bad acts and that such prejudice greatly outweighs the probative value

of the evidence.  (*Id.* at 7.)

    "To be relevant, evidence need only tend to prove the government's case, and evidence

that adds context and dimension to the government's proof of the charges can have that tendency."

*United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997).  The Second Circuit is clear that

"[t]he trial court may admit evidence that does not directly establish an element of the offense

charged, in order to provide background for the events alleged in the indictment.  Background

evidence may be admitted to show, for example, the circumstances surrounding the events or to

furnish an explanation of the understanding or intent with which certain acts were performed."

*United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991) (quoting *United States v. Daly*, 842

F.2d 1380, 1388 (2d Cir. 1988)).  Furthermore, "evidence of uncharged criminal activity is not

considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction

or series of transactions as to the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (quoting *Gonzalez*, 110 F.3d at 942).

The Court finds that evidence of Defendant's threat to shoot his ex-girlfriend on August 3, 2020 is admissible as direct evidence because it provides crucial context and is inextricably intertwined with Defendant's charged conduct.  The Government asserts that Defendant's threat to shoot his ex-girlfriend predicated Defendant's ex-girlfriend's drive to the PPD headquarters on the date of the charged offense.  (Gov.'s Mot. at 8–9.)  The Government expects to offer evidence that Defendant appeared at PPD headquarters initially prior to the shooting to report that the police should disregard any expected complaint from his ex-girlfriend that Defendant had threatened her. (*Id.* at 9.)  The Court finds that absent an explanation as to why Defendant went to the PPD headquarters on August 3, 2020, the jury might be left without a basic understanding of the events that occurred on the day of the charged offense.

Defendant argues that "complet[ing] the story" is an impermissible basis for admissibility under Rule 404(b).  (Def.'s Opp. at 4.)  Indeed, this is not an enumerated purpose under Rule 404(b).  But, as case precedent makes clear, evidence that "complete[s] the story of the crime on trial" or that "is inextricably intertwined with the evidence regarding the charged crime," is considered direct evidence of a charged crime rather than other evidence under Rule 404(b).  *See Carboni*, 204 F.3d at 44; *see also United States v. Martoma*, No. 12 CR 973 PGG, 2014 WL 31191, at *2 (S.D.N.Y. Jan. 6, 2014).  Courts routinely admit evidence of this nature to "g[i]ve coherence to the basic sequence of events."  *Gonzalez*, 110 F.3d at 942; *see also United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007); *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994) ("evidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged

by demonstrating the context of certain events relevant to the charged offense").  Where, as here, the exclusion of evidence concerning the uncharged conduct would create a "conceptual void in the story of the crime," admission of such evidence is appropriate.  Vol. 2, Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 404.20(2)(c) (2011).  Indeed, many courts have admitted direct evidence on this basis.  *See, e.g.*, *United States v. Estevez*, No. S2 16 CR 307 (CM), 2017 WL 700775, at *1 (S.D.N.Y. Feb. 16, 2017) (admitting testimony about defendant's purported plan to rob drug dealer in trial on charge of possession of firearm as a felon); *United States v. Cruz*, 343 F. Supp. 2d 226, 231 (S.D.N.Y. 2004) (admitting physical evidence that provides jury with "a complete picture of the events surrounding the discovery of the firearm").

Defendant also argues that admitting this evidence impermissibly induces the jury to convict him based on prior bad acts and is inadmissible pursuant to Rule 403.  (Def.'s Opp. at 7.) The Court disagrees and concludes that the probative value of admitting direct evidence of the charged crime is substantially outweighed by the risk of unfair prejudice.  Furthermore, the Court intends to provide a limiting instruction to mitigate any risk of the jury drawing improper inferences from this evidence.

Accordingly, the Court preliminarily grants the Government's motion to introduce evidence of Defendant's prior threats to shoot his ex-girlfriend with leave for Defendant to renew his objections during trial.

## II.     Scope Of Cross-Examination Of Law Enforcement Witnesses

The Government asks the Court to limit the scope of cross-examination of law enforcement witnesses to the subject matter of the direct examination of the witnesses and matters affecting the credibility of the witnesses.  (Gov.'s Mot. at 11–14.)  The Government expects their law enforcement witnesses to testify about discrete investigative techniques they participated in.  (*Id.*

at 13.)  The Government argues that Defendant should be precluded from "conduct[ing] cross-examination that exceeds the scope of the direct examination solely because the witness is an agent who has a broader involvement in an investigation of the defendant." (*Id.*)  Defendant argues the Government's request is premature because neither party knows what evidence will be adduced at trial and that to restrict the scope of cross-examination prior to trial impermissibly deprives Defendant of the ability to put on a meaningful defense.  (Def.'s Opp. at 8–9.)

This Court has broad discretion in determining the scope of cross-examination.  *See United States v. Koskerides*, 877 F.2d 1129, 1136 (2d Cir. 1989); *United States v. Whitten*, 610 F.3d 168, 183 (2d Cir. 2010).  As Defendant concedes, it is "incontrovertible," (Def.'s Opp. at 8), that the general rule is that "[c]ross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility." Fed. R. Evid. 611(b).  The fact that a witness is a law enforcement agent who had a broader involvement in an investigation of the defendant does not expand the scope of permissible cross-examination.  *See United States v. Solla*, No. 19 CR. 740 (CM), 2021 WL 5756394, at *7 (S.D.N.Y. Dec. 2, 2021) (collecting cases).  The Court finds the Government's request to be premature because the Government's witnesses have yet to testify and thus the scope of the witnesses' direct examination regarding the investigation of the defendant is still unknown.  *See United States v. Sampson*, No. 13-CR-269 S-5 DLI, 2015 WL 2066073, at *15 (E.D.N.Y. May 4, 2015).

Therefore, the Court denies the Government's motion as to the scope of cross-examination of law enforcement witnesses as premature.  The Government may renew their objection at trial if Defendant's cross-examination goes beyond the scope of the direct examination.

### III.     Cross-Examination Of Eyewitnesses Regarding Drug Or Alcohol Usage

The Government asks the Court to limit the scope of Defendant's cross-examination of eyewitnesses regarding any drug or alcohol use other than during the time of the observed events. (Gov.'s Mot. at 14–15.)   According to the Government, one eyewitness from the barbershop reportedly uses marijuana on a regular basis but was not under the influence at the time of the events in question.  (*Id.* at 14.)  Defendant opposes the limitation as premature and too broad of a remedy.  (Def.'s Opp. at 10.)  Defendant argues that this line of questioning is permissible on cross-examination if it bears on a witness's character for truthfulness.  (*Id.* at 11.)

It is well established that "a witness's use of drugs or alcohol, in and of itself, is not probative of their character for truthfulness."  *United States v. Krug*, No. 1:15-CR-00157 RJA, 2019 WL 416946, at *4 (W.D.N.Y. Feb. 2, 2019) (citing *Furlong v. Circle Line Statute of Liberty Ferry*, 902 F. Supp. 65, 68 (S.D.N.Y. 1995)).  Of course, a witness's drug or alcohol use at or around the time of the events in question is relevant to a witness's credibility.  *See id.*  To the extent Defendant has "a good faith basis" to impeach the eyewitness regarding his statements on his sobriety during the time of the observed events, Defendant is permitted to do so.  *See Dobson v. Walker*, 150 F. App'x. 49, 52 (2d Cir. 2005).

Accordingly, the Court prohibits the cross-examination of eyewitnesses regarding any drug or alcohol use other than during the time of the observed events, except when the defense has a good faith basis to impeach an eyewitness regarding his sobriety during the time of the observed events.

### IV.     Cross-Examination Of Defendant's Ex-Girlfriend Regarding Prior Conviction

The Government asks the Court to prohibit cross-examination of Defendant's ex-girlfriend regarding her prior misdemeanor conviction.  (Gov.'s Mot. at 16–17.)   According to the

Government, Defendant's ex-girlfriend was arrested for crimes in the past and was convicted for third-degree assault in 2018.  (*Id.* at 16.)  The Government argues that such conviction does not bear on the witness's credibility because the misdemeanor does not require a dishonest act or false statement.  (*Id.*)  Defendant opposes the request as improper and premature.  (Def.'s Opp. at 11.) Defendant argues that the prior conviction "may be relevant and properly admissible for purposes other than attacking the witness's character for truthfulness."  (*Id.* at 11–12.)

Under Federal Rule of Evidence 609, evidence of a witness's prior conviction can be admitted for impeachment purposes, subject to certain limitations.  Fed. R. Evid. 609.  "[E]vidence of convictions for crimes involving dishonesty or false statement, whether felonies or misdemeanors, *must* be admitted under Rule 609(a)(2) as being *per se* probative of credibility, while district courts, under Rule 609(a)(1), *may* admit evidence of a witness's felony convictions that do not constitute *crimen falsi*, subject to balancing pursuant to Rule 403."  *United States v. Estrada*, 430 F.3d 606, 615 (2d Cir. 2005) (internal quotation marks omitted).  Where a crime does not automatically implicate the use of dishonesty or false statements, "the proffering party must demonstrate 'that [the] particular prior conviction rested on facts warranting the dishonesty or false statement description.'"  *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997) (citing *United States v. Hayes*, 553 F.2d 824, 827 (2d Cir. 1977)).  The Second Circuit has repeatedly held that crimes of violence generally do not rest on dishonest conduct that relates to a witness's credibility. *See, e.g.*, *United States v. Walker*, 974 F.3d 193, 207 (2d Cir. 2020) (upholding trial court's preclusion of inquiry into prior domestic violence claims as irrelevant to witness credibility); *Estrada*, 430 F.3d at 618 ("convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not").  Because the witness's prior conviction was a crime of violence and because Defendant does not otherwise suggest that this

prior conviction involved the use of dishonesty or false statements, the Court grants the Government's motion to preclude the cross-examination of Defendant's ex-girlfriend regarding her prior third-degree assault conviction.

## V.  Challenge Of Legality Of Arrest And Search Of Cellphone

The Government asks the Court to preclude Defendant from challenging at trial the legality of his arrest and the subsequent search of his cellphone by the Government.  (ECF No. 17–18.) Defendant responds that he "does not anticipate raising a motion to suppress regarding physical evidence or evidence seized from his cell phone.  Nor does [he] anticipate challenging the constitutional validity of his arrest." (*Id.* at 13.)  Rather, Defendant "does intend to challenge the conduct of law enforcement officers in their investigation of the instant case, before, during, and after the defendant's arrest." (*Id.*)

Because Defendant has represented that he does not intend to challenge the legality of his arrest or to challenge the search of his cellphone, the Government's motion is therefore denied as moot.

## VI.  Reference To Defendant's Ex-Girlfriend As A "Victim"

Defendant seeks to preclude the Government from referring to his ex-girlfriend as a "victim." (Defendant's Motion *In Limine* ("Def.'s Mot."), ECF No. 41 at 4–5.)  Defendant notes that the charged crime of being a felon in possession of a firearm, 18 U.S.C. § 922(g), "does not describe a crime for which there is any identifiable victim." (*Id.* at 4.)  Defendant argues that permitting the Government to refer to his ex-girlfriend as a "victim" during trial would "deprive him of the presumption of innocence, and impermissibly shift[s] to him the burden of proof" and would present a likelihood of misleading and confusing the jury by suggesting that a crime has occurred and by suggesting that he is on trial for the alleged shooting rather than for possession.

(*Id.* at 4–5.)  Defendant asserts that such prejudice is impermissible under Rule 403 when balanced against the lack of probative value of labeling his ex-girlfriend as a "victim" with respect to the core elements of a § 922(g) charge.  (*Id.*)  The Government responds that it intends to refer to Defendant's ex-girlfriend primarily by name but that it should be permitted to make limited reference to her as a "victim," such as during opening statement.  (The Government's Opposition to Defendant's Motions *In Limine* ("Gov.'s Opp."), ECF No. 50 at 1.)  The Government posits that the term "victim" is not inherently prejudicial and does not otherwise shift the burden of proof to Defendant.  (*Id.* at 2.)

The Court agrees with Defendant and finds that the probative value of referring to Defendant's ex-girlfriend as a "victim" is outweighed by the risk of unfair prejudice under Rule 403.  The Court is not persuaded by the Government's citations of other federal courts denying similar requests.  In those cases, Defendants were charged with crimes committed against a person. *See United States v. Lussier*, No. 18-CR-281 (NEB/LIB), 2019 WL 2489906, at *5 (D. Minn. June 15, 2019) (assault with a dangerous weapon and assault resulting in serious bodily injury); *United States v. Henery*, No. 1:14-CR-00088-BLW, 2015 WL 409684, at *5 (D. Idaho Ja. 29, 2015) (federal hate crimes).  Here, in contrast, the charged violation of 18 U.S.C. § 922(g)(1) and (2), being a felon in possession of a firearm, does not involve a crime against a person.  Any reference to Defendant's ex-girlfriend as a "victim" does not provide probative value to the core elements of this charged crime.  The Court also finds that the Government will be able to provide the jury with the context of the events of August 3, 2020 without referring to Defendant's ex-girlfriend as a "victim."

Accordingly, the Court precludes the Government from referring to Defendant's ex-girlfriend as a "victim" during trial.

## VII.    Portions of the 911 Call

Defendant seeks to exclude a portion of a 911 recording in which an unidentified officer referred to him by name because the probative value is outweighed by unfair prejudice under Rule 403.  (Def.'s Mot. at 5–7.)  Because the Government has agreed to redact that portion of the 911 call (Gov.'s Opp. at 2–3), Defendant's motion on the issue is denied as moot.

## VIII.   Audio and Video Recordings Of Defendant In Peekskill Police Department

Defendant was captured on PPD surveillance cameras as appearing "highly agitated" when he went to PPD to file a complaint against his ex-girlfriend on August 3, 2020.  (*See* Def's Mot. at 7; Gov.'s Opp. at 13.)  Defendant seeks to exclude any audio and video recordings of Defendant in PPD as irrelevant and unfairly prejudicial.  (Def's Mot. at 7–9.)  The Government disagrees and seeks to admit the recordings because they are "inextricably intertwined with the charged crime," "corroborate[] Defendant's identity and location," and demonstrate Defendant's intent to commit the charged offense.  (Gov.'s Opp. at 13–14.)

The Court agrees with the Government that the recordings of Defendant at PPD prior to the alleged shooting are relevant to the charged crime.  The recordings as described would tend to corroborate Defendant's identity and location and demonstrate his knowledge and intent with regards to the charged crime.  Indeed, even Defendant concedes that the evidence could demonstrate his "mindset and demeanor" as "somehow probative of his knowledge and state of mind."  (Def.'s Mot. at 9.)  The Court finds that the probative value of this recording significantly outweighs any risk of prejudice raised by Defendant.

Accordingly, the Court admits the audio and video recordings of Defendant from PPD captured on August 3, 2020.

13

### IX.     Defendant's Prior Criminal History and Specific Acts of Prior Offense

Defendant seeks to exclude evidence of his prior criminal history.  (Def.'s Mot. at 9–10.)  On December 28, 2021, the Government informed the Court that "the parties have agreed to stipulate regarding [Defendant]'s prior felony conviction and his knowledge of that prior felony conviction on and before the date of the offense."  (ECF No. 63.)  As such, Defendant's motion to preclude evidence of his criminal history is denied as moot.

### X.     Reference to Defendant As A "Convicted Felon"

Defendant seeks to preclude the Government from referring to him as a "convicted felon" on the basis that such reference holds no probative value and instead improperly suggests to the jury that he has a propensity for criminal behavior and creates a likelihood that he will be convicted based on his prior criminal history.  (*See* Def.'s Mot. at 10–12.)  The Government disagrees and notes that the term "convicted felon" is a commonly accepted shorthand to refer to the prior-conviction element of the charged crime.  (Gov.'s Mot. at 5–8.)

Courts in this circuit have declined to preclude the Government from using the term "convicted felon" during trials for Section 922(g) charges.  *See United States v. White*, 312 F. Supp. 3d 350, 354 (E.D.N.Y. 2018) (declining to prohibit the use of the phrase "convicted felon"); *United States v. White*, No. 08CR0682(NGG), 2009 WL 4730234, at *2 (E.D.N.Y. Dec. 4, 2009) (declining to impose a blanket prohibition on "convicted felon").  This Court agrees that the term "convicted felon" is a "convenient shorthand of the prior-conviction element of the statutory offense charged."  *White*, 2009 WL 4730234, at *2.  The Court is not otherwise persuaded by Defendant's arguments that such reference is severely prejudice so as to fail the Rule 403 balancing test.  Given that the parties have stipulated to Defendant's prior felony conviction (ECF No. 63), this Court expects the Government to "refer generally to the defendant's prior felony convictions

14

in a judicious manner," (Gov.'s Opp. at 5).  The Court notes, however, that it will closely monitor the Government's use of the term "convicted felon" to ensure the term is not overused or employed in a prejudicial manner.  *See White*, 312 F. Supp. 3d at 354 (cautioning the same).

Accordingly, this Court denies Defendant's motion to preclude the Government from referring to him as a "convicted felon."  The Court also notes its intention to issue a limiting instruction regarding the stipulated fact of Defendant's prior conviction.

### XI.    Evidence Of The Shooting

Defendant seeks to preclude any references or evidence of the shooting.  (Def.'s Mot. at 11–12.)  Defendant argues that the shooting is an uncharged crime and is not relevant evidence. Rather, the shooting is evidence of a prior bad act inadmissible under any of the permitted purposes in Rule 404(b).  (*Id.* at 11.)  Furthermore, Defendant argues that such reference is precluded by Rule 403 as highly prejudicial because it is inflammatory evidence that presents a likelihood the jury might convict the defendant based on the shooting rather than the charged crime.  (*Id.*)  The Government disagrees and argues that evidence of the shooting is relevant evidence that is more probative than prejudicial.  (Gov.'s Opp. at 8–13.)  Specifically, the Government argues that evidence of the shooting proves possession of the firearm and thus is highly probative of the charged crime.  (*Id.* at 8–10.)

As discussed *infra* Section I, evidence is admissible as direct evidence rather than as evidence of prior bad acts governed by Rule 404 when "it ar[ises] out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *Carboni*, 204 F.3d at 33.  Here, the charged offense—felon in possession of a firearm—requires the Government to establish beyond a reasonable doubt that Defendant possessed a firearm.  The

Government seeks to introduce evidence of the shooting because "the defendant possessed the firearm in question while shooting at his ex-girlfriend." (Gov.'s Opp. at 10.)  The Court agrees that the shooting is "inextricably intertwined with the evidence of the charged offense" of possession of a firearm and that such evidence is both relevant and highly probative. *See Carboni*, 204 F.3d at 33.

Defendant argues that admitting evidence of the shooting on August 3, 2020 impermissibly puts Defendant on trial for the shooting, an uncharged crime. (Def.'s Mot. at 11.)  While the Court recognizes that there is a risk of prejudice to the defendant, the Court finds that such risk is outweighed by the significant probative value of the evidence and is admissible under Rule 403. The Court, however, will seek to minimize the prejudicial effects of this evidence by issuing a limiting instruction to mitigate any risk of the jury drawing improper inferences from this evidence.

Accordingly, Defendant's motion to preclude evidence and references to the shooting is denied and the Government is permitted to introduce evidence of the shooting.

## CONCLUSION

For the foregoing reasons, the Government's motion *in limine* is GRANTED in part and DENIED in part and Defendant's motion *in limine* is GRANTED in part and DENIED in part.  In summary, the Court preliminarily (1) admits evidence of Defendant's threats to shoot his ex-girlfriend on the day of the charged offense; (2) declines to limit the scope of the cross-examination of law enforcement witnesses; (3) prohibits the cross-examination of eyewitnesses regarding drug or alcohol use except as it relates to the time of the observed events or if used by Defendant to impeach an eyewitness on a good faith basis; (4) prohibits the cross-examination of Defendant's ex-girlfriend regarding her prior conviction; (5) precludes any reference to Defendant's ex-girlfriend as a "victim"; (6) admits the audio and video recordings of Defendant in PPD on August

16

3, 2020; (7) declines to preclude the Government from referring to Defendant as a "convicted felon"; and (8) admits evidence of the shooting.  Additionally, the Court denies as moot (1) the Government's motion to preclude Defendant from challenging the legality of his arrest and of subsequent search of his cellphone; (2) Defendant's motion to exclude a portion of the 911 call; and (3) Defendant's motion to exclude evidence of his prior criminal history.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 39 and 41.

Dated:   January 3, 2022                              SO ORDERED:
         White Plains, New York

                                          _____
                                                NELSON S. ROMÁN
                                            United States District Judge