USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/3/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

   -against-

MYRON WAGNER,

                      Defendant.

No. 20-CR-410 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Defendant Myron Wagner ("Defendant"), also known as "My Dogg," is charged by indictment on August 17, 2020, with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and (2). (ECF No. 9.) A trial is scheduled for January 12, 2022. (ECF No. 51.) Before the Court is Defendant's motion to suppress any evidence offered by the government at trial through Witness #1 and Witness #2.[1] (ECF No. 53.)

For the following reasons, Defendant's motion is denied.

## BACKGROUND

The facts herein are drawn from the criminal complaint filed in this matter (ECF No. 1), the Indictment (ECF No. 9), and the parties' submissions (ECF Nos. 54 & 62).

On or about August 3, 2020, Defendant entered the Peekskill Police Department ("PPD") headquarters in Peekskill, New York to file a complaint against his then-girlfriend. (ECF No. 1 at 2.) Defendant was captured on surveillance footage to have entered the PPD headquarters at approximately 2:40 P.M. and left at approximately 2:42 P.M. (*Id.*) At approximately 2:47 P.M.,[2]

---

[1] The parties appear to differ in labeling who is Witness #1 and Witness #2 as it relates to the Array-1 and Array-2 forms attached as Exhibits A and B to Defendant's motion. (ECF Nos. 54-1 & 54-2.) Throughout this opinion, the Court will refer to Witness #1 as the witness to whom Array-2 (ECF No. 54-2) was shown and Witness #2 as the witness to whom Array-1 (ECF No. 54-1) was shown.

[2] The Complaint initially stated the 911 call was made at approximately 2:55 P.M. (ECF No. 1 at 2.) The Government later corrected the time to approximately 2:47 P.M. (ECF No. 50 at 9, n.4.)

a 911 call was made during which the caller reported that his wife had just witnessed a black male with black shorts and a red hat pull out a silver gun and shoot at a vehicle at the intersection of Nelson Avenue and Pauling Street in Peekskill, New York. (ECF No. 1 at 2–3.) PPD officers responding to the 911 call saw an individual, later identified as Defendant, wearing the same clothing described by the 911 caller approximately two blocks away from the reported shooting. (ECF No. 62 at 1.) The individual ran into a barbershop and emerged approximately thirty seconds later, at which point PPD officers detained the individual. (*Id.* at 2.)

PPD officers interviewed the employees of the barbershop, including Witness #1 and Witness #2. (*Id.*) Witness #1 stated that he personally knows Defendant, nicknamed "Doggy," who is a customer of his at the barbershop. (*Id.*) Witness #1 stated that on August 3, 2020, Defendant ran into the barbershop quickly, stopped at one of the chairs, said something to Witness #2 before leaving. (*Id.*) The Government expects Witness #1 to testify that he first met Defendant around 2011 and that he had cut Defendant's hair a few days prior to August 3, 2020. (*Id.*) Witness #2 stated that he knows Defendant by face but not by name as a client of Witness #1 at the barbershop. (*Id.*) Witness #2 stated he cuts Defendant's father's hair and that on August 3, 2020, Defendant entered the barbershop and tossed a silver resolver in his lap. (*Id.*)

On August 17, 2020, a grand jury returned a one-count indictment, which charges Defendant with, knowing that he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly possessing a firearm, to wit, a loaded Rohm RG-10, .22 caliber pistol, and the firearm was in and affecting commerce on or about August 3, 2020. (ECF No. 9.) On August 31, 2020, Defendant was arraigned before the Honorable Paul E. Davison during which Defendant entered a plea of Not Guilty.

On October 18, 2021, Witness #1 and Witness #2 agreed to review photo arrays at the PPD station. (ECF No. 62 at 2.) The administering PPD officer was not involved in the underlying investigation into the Defendant. (*Id.*) Prior to showing the arrays, the administering officer read detailed instructions listed on page 1 of the array forms that both witnesses acknowledged receiving by initialing the array forms. (*Id.* at 2–3; *see* ECF No. 54-1 at 1; ECF No. 54-2 at 1.) The two witnesses were presented six-person arrays. (ECF No. 62 at 3.) After the witnesses reviewed the photo arrays, the administering officer asked a series of questions: (i) "Did you recognize anyone in the photo array?"; (ii) "If so, what is the number of the person you recognize?"; and (iii) "from where do you recognize that person?" (*Id.* at 3–4.) Witness #1 identified Defendant's picture, photograph number 3 on his array, and answered that he knew Defendant "from the incident where he showed up at my job with a firearm and threw it at my co-worker." (*Id.*; ECF No. 54-2 at 2.) Witness #2 identified Defendant's picture, photograph number 5 on his array, and answered that he knew Defendant as "the man who ran into my job with a handgun and threw it on my lap." (ECF No. 62 at 3–4; ECF No. 54-1 at 1.) Both witnesses signed the photo array forms and statements confirming their identifications below a warning that the statements were punishable under New York Penal Law. (ECF No. 52 at 4; ECF No. 54-1 at 6; ECF No. 54-2 at 6.)

On December 19, 2021, Defendant filed a motion to suppress any identification evidence offered by the Government at trial through Witness #1 and Witness #2 on the grounds that the photographic identification procedures utilized as to the two witnesses were in violation of Defendant's due process rights under the Fifth and Fourteenth Amendments. (ECF No. 53.) Defendant also requests the Court to hold a pretrial hearing "to explore and determine the facts and circumstances surrounding the pretrial identification of the defendant" should the Court not

grant the motion sua sponte.  (Defendant Myron Wagner's Memorandum In Support Of Motion To Suppress Evidence Of Identification ("Def.'s Mot."), ECF No. 54 at 6.)  On December 27, 2021, the Government filed a memorandum of law opposing Defendant's motion to suppress and request for a hearing.  (The Government's Memorandum Of Law In Opposition To Defendant Myron Wagner's Motion To Suppress ("Gov.'s Opp."), ECF No. 62.)

## LEGAL STANDARDS

It is well established that evidence of "[a] prior identification will be excluded only if the procedure that produced the identification is 'so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law.'" *United States v. Salameh*, 152 F.3d 88, 125 (2d Cir. 1998) (quoting *United States v. Simmons*, 923 F.2d 934, 950 (2d Cir. 1991)).  Where a pretrial identification is challenged, a court must evaluate using a one- or two-step inquiry.  "The first question is whether the pretrial identification procedures were unduly suggestive of the suspect's guilt." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990).  If they were not, the identification is "generally admissible without further inquiry into the reliability of the pretrial identification."  *Id.*; *accord Raheem v. Kelly*, 257 F.3d 122, 133–34 (2d Cir. 2001).  "If the pretrial procedures were unduly suggestive, the analysis requires a second step; the court must then weigh the suggestiveness of the pretrial process against factors suggesting that an in-court identification may be independently reliable rather than the product of the earlier suggestive procedures."  *Maldonado-Rivera*, 922 F.2d at 973.

Significantly, a defendant "may not baldly request" a hearing into the admissibility of pretrial identification evidence—commonly known as a *Wade* hearing.  *United States v. Berganza*, No. S(4) 03-cr-987 (DAB), 2005 WL 372045, at *10 (S.D.N.Y. Feb. 16, 2005).  To be entitled to a hearing, a defendant "must allege facts supporting his contention that the identification

4

procedures used were impermissibly suggestive. A 'threshold showing' of suggestiveness is necessary in order to trigger a *Wade* hearing." *Id.*; *see also United States v. Swain*, No. S(4) 08 CR 1175 JFK, 2011 WL 4348142, at *7 (S.D.N.Y. Aug. 16, 2011) (holding that a defendant is not entitled to a hearing where his "suggestion of impropriety in the presentation of a photo array is mere speculation"); *United States v. Adeniyi*, No. 03 CR 0086(LTS), 2003 WL 21146621, at *3 (S.D.N.Y. May 14, 2003) (denying a motion without a hearing where the defendant failed to proffer "any information indicating that there were irregularities in the presentation of the arrays"); *United States v. Giovanelli*, 747 F. Supp. 875, 885 (S.D.N.Y. 1989) (denying a request for a hearing where the defendant did not allege "any concrete grounds" to suggest that identification procedures were improper).

## DISCUSSION

Defendant moves to suppress identification evidence from Witness #1 and Witness #2 on the basis that "the identification procedure utilized by the government was conducted in an 'unnecessarily suggestive' manner which was conductive to the likelihood of the irreparable mistaken identification of the defendant." (Def.'s Mot. at 4).

### I. Photo Arrays

#### a. Unduly Suggestive

Defendant broadly argues that the identification procedure used by the Government was unnecessarily suggestive without providing any basis for this claim. (*See* Def.'s Mot.) The Government presented six-person photographic arrays to the two witnesses. (Gov.'s Opp. at 3; ECF No. 54-1 at 4–5; ECF No. 54-2 at 4–5.) "The fairness of a photographic array depends on a number of factors, including the size of the array, the manner of presentation by the officers, and the array's contents." *United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992). The Court

finds that the six-person photo arrays presented were not unduly suggestive. First, courts in this Circuit have routinely upheld the use of six-person photo arrays. *See United States v. Morgan*, 690 F. Supp. 2d 274, 283 (S.D.N.Y. 2010) ("Courts in this Circuit have held that a photo array containing six or more photographs is sufficiently large so as not to be unduly suggestive."); *United States v. Goode*, No. 16 CR. 529 (NSR), 2018 WL 919928, at *12 (S.D.N.Y. Feb. 15, 2018) ("The witnesses were shown six photographs of African-American males—a number sufficient to protect the Defendant's due process rights."). Second, the photo arrays displayed photographs of six individuals of similar complexions, hairstyles, and facial hair. An array is not unduly suggestive where the photograph of a defendant does not "so stands out from the other five photographs as to suggest that he is the person suspected" in a "photo array comprised of six individuals with similar complexions, hairstyles, and facial compositions." *United States v. Zadiriyev*, No. 08 CR 1327 (HB), 2009 WL 1787922, at *2 (S.D.N.Y. June 23, 2009). Here, the photo arrays were appropriate, and Defendant does not otherwise make any arguments as to whether or how his photograph sticks out from the rest of the photographs presented on the arrays.

Furthermore, Defendant makes no claims regarding the administration of the presentation of the photo arrays. Indeed, Defendant concede that he is "unable . . . to make any representations regarding what was said and/or done by law enforcement during presentation of the photos . . . [and] also unable to make any representations as to whether the witnesses discussed the identification procedures among themselves, or were told, or told others what the number of the defendant was." (Def.'s Mot. at 4.)

Accordingly, the Court finds that the photo arrays used to identify Defendant were not unduly suggestive.

### b. Independently Reliable

Because the arrays were not unduly suggestive, Defendant's motion to suppress the pretrial identification fails. However, even if the arrays were unduly suggestive—which they were not— the identifications were independently reliable. The factors that the Court must consider in making this determination include: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199 (1972). "The independent basis [for reliable identification] may also derive from the witness's past relationship with the defendant." *United States v. Sosa*, 17 Cr. 580 (NRB), 2018 WL 4659472, at *2 (S.D.N.Y. Sept. 12, 2018).

As applied here, the factors favor the Government. Witness #1 is expected to testify that he has known Defendant since 2011, that Defendant is his customer at the barbershop, and that he had cut his hair a few days before the alleged offense. (Gov.'s Opp. at 4). Witness #1 was present at the barbershop on the day that Defendant allegedly "showed up at [his] job with a firearm and threw it at [his] co-worker." (ECF No. 54-2 at 2.) Witness #2 was also present at the barbershop on August 3, 2020 and is expected to testify that he knows Defendant by face as a client of Witness #1 at the barbershop. (Gov.'s Opp. at 4.) Witness #2 identified Defendant as "the man who ran into my job with a handgun and threw it on my lap." (ECF No. 54-1 at 2.) Defendant alleges that these identifications are inaccurate because the photo arrays were viewed approximately fifteen months after the alleged offense. (Def.'s Mot. at 5.) However, the Court finds that on balance the factors of reliability, along with the witnesses' past relationship with Defendant, weigh in favor of the Government.

Accordingly, the Court finds that the identifications were independently reliable.

### II.     Pretrial Hearing

Defendant has requested a pretrial hearing pursuant to *United States v. Wade*, 388 U.S. 218 (1965), "to explore and determine the facts and circumstances surrounding the pretrial identification of the defendant." (Def.'s Mot. at 5–6.)  As explained above, there is no evidence that the photo array was impermissibly suggestive.  Further, Defendant fails to allege any deficiencies with how the photo array identification was conducted.  "Absent a contested issue of material fact as to the suggestiveness of pretrial identification procedures, a defendant is not automatically entitled to an evidentiary hearing on the claim." *See Goode*, 2018 WL 919928, at *13 (internal quotation omitted); *United States v. Castellano*, 610 F. Supp. 1359, 1439 (S.D.N.Y. 1985) ("A defendant who seeks to suppress evidence bears the burden of showing that disputed issues of material fact exist before an evidentiary hearing is required.").  Accordingly, the Court denies Defendant's "bald[] request" for a *Wade* hearing.  *See Berganza*, 005 WL 372045, at *10.

### CONCLUSION

For the foregoing reasons, Defendant's motion to suppress and for a *Wade* hearing is DENIED.  The Clerk of Court is respectfully directed to terminate the motion at ECF No. 53.

Dated:   January 3, 2022                                        SO ORDERED:
         White Plains, New York

_____
          NELSON S. ROMÁN
         United States District Judge